## GEORGE R. SHIBLEY AND OTHERS, APPELLANTS, *v.* DAVID ANGLE AND OTHERS, RESPONDENTS.

*Joint-debtors— Contribution— Corporation— Co-partnership.*

The rule that joint-debtors, &c., are severally liable to contribute each for any excess beyond his proportion paid to relieve from a common liability, is not unqualified in settling the equities between the parties themselves.

In such case, as between debtors joint in form and jointly liable to third parties, it is competent to show that one became bound for the benefit of all the others, or for his own personal benefit.

Subscription to the stock of a proposed seminary to be incorporated, does not constitute the subscribers co-partners, or authorize any one to contract debts or advance money on the credit of such subscription, with a view to make the subscribers liable therefor.

WOODRUFF, J.—The question in this case is, whether the parties Plaintiff and Defendant bore to each other the relation of co-partners in such sense that they are bound to contribute for the reimbursement of those who, in addition to their subscriptions, have advanced money for the advancement of the enterprise set on foot by them.

It is in order that such contribution may be decreed that an accounting between the parties is sought.

The general rule that joint-debtors, joint-tenants, and tenants in common, co-sureties and co-partners, are severally liable to contribute, each for any excess beyond his proper share paid by either, in relief of the others from a common burden, is not called in question.

But this rule is not unqualified and invariable. The equities of the parties, as between themselves, are always relevant, and may defeat any claim to contribution, notwithstanding the burden as between them and third parties was common, and might have been enforced against all.

Hence, as between debtors joint in form and jointly liable for the whole debt, it may be shown that one became bound for the benefit of the other.

As between co-sureties it may, in defence to an action for contribution, be shown that one became bound and protected by a collateral agreement that he should be indemnified by the other, or that he became bound for the accommodation and at the solicitation of such other.

And as between co-partners, it may be shown that the debt to which the Plaintiff seeks to compel contribution was contracted by the Plaintiff without being authorized by the articles of co-partnership, or if within the apparent scope of those articles, yet for his individual benefit.

In short, liability to contribution does not depend alone upon the question whether the parties were jointly liable to third persons for the debt, which some of them have paid, but upon the equities existing between themselves, arising from their agreements or their acts inter se.

And the same is no less true in regard to moneys directly paid by some in the purchases made of property intended to be used in the enterprise.

What, upon the facts found, were the relations established between the parties?

The referee finds that the Plaintiffs and the Defendants (excepting certain five who are mentioned) "became stockholders in the Carlisle Seminary—a seminary of learning, located in the village of Carlisle, Schoharie county, New York."

"That they did not become partners or members of a joint-stock association."

That the paper annexed to his report was signed by the Plaintiffs and some of the Defendants, as follows:

"We, the subscribers, wishing to establish a seminary of learning at the village of Carlisle, in the county of Schoharie, to be incorporated according to law, and to go into operation as soon as practicable, and in order to create a fund and capital stock for the purpose, do hereby unitedly and severally promise and agree, to and with each other, that we will each take and pay for stock therein to the amount set against our respective names; said stock shall be issued in shares of $25 each, and the whole amount

shall not be less than $10,000. Subscriptions to be paid on such instalments as may hereafter be determined on by the stockholders.

"Dated December 31, 1852."

That the institution in which the said parties became stockholders was incorporated by the name of "The Carlisle Seminary," by the Regents of the University of the State of New York, on the 20th day of October, 1853, and a charter issued; and that scrip under the corporate seal was issued to the Plaintiffs and other stockholders of the seminary.

That the Plaintiffs in this action acted as trustees, and advanced and became liable upon notes for money, which has been expended in the erection and furnishing of said seminary, to the amount of several thousand dollars; and that such advances and liabilities were mostly made before the incorporation of the said seminary, but were made and incurred by the said Plaintiffs upon the credit of the corporation, and not upon the credit of the stockholders, or of the Defendants personally, and that the Plaintiffs, after the charter was issued, obtained judgments for their said demands against "The Carlisle Seminary," in the Supreme Court of this State, which judgments have not been satisfied.

The finding of the referee, that the parties did not become partners or members of a joint-stock association, is, of course, to be taken in connection with his finding of the actual agreement which was signed.

The true question arising upon the facts found is, did the signing of the agreement subject the signers to a liability to contribute to the advances made by the Plaintiffs, as trustees, as stated in the subsequent finding?

It certainly contained no express authority to any one to contract liabilities or advance money for the common benefit.

There are no terms of agreement by the parties to do anything except to take stock and pay therefor; and there is no finding that this agreement has not been performed.

From such a promise no implied authority can be inferred, warranting any of the parties in contracting debts, or advancing money on the credit of the other parties, or of the parties jointly

or otherwise, except in faith that the subscribers would pay what they agreed to pay.

The agreement so signed is simply an agreement to take and pay for stock in an association to be incorporated. It did not contemplate the conduct of any enterprise as co-partners, nor as members of an unincorporated joint-stock association.

At most, it contemplated the taking of such preliminary steps as were essential to the procurement, either from the Legislature or from the Regents of the University, of the requisite act which should create an incorporation under the laws of this State. And it is not claimed here that the moneys subscribed and paid were more than sufficient to pay any expense of such incorporation.

If, by the mere association to procure an act of incorporation, a relation in the nature of co-partnership was established, it was confined to the simple purpose of obtaining an act of incorporation to carry into accomplishment the wish of the parties to establish a seminary of learning. And it conferred no power upon any of the associates to do any thing not reasonably necessary for the purpose.

Whether any pecuniary advantages were expected to result from the establishment of such an incorporated institution, and their taking and paying for stock therein or not, does not affect the construction of this agreement in respect of the power or authority conferred.

But in my judgment the only obligation assumed by any subscriber to the others, or any of the others, was to pay the sum subscribed. The expression of their desire to establish a seminary of learning was not a communication of authority to take measures on their responsibility for that purpose, but a mere suggestion of the motive or consideration inducing them to agree to pay the specified sums of money mentioned by each as a subscription to its stock.

This view of the subject renders the further findings of the referee consistent with the relations established by the agreement, viz.: that certain of the parties, in reliance upon the corporation about to be created, and not on the credit of the subscribers to its

stock, made advances to facilitate the early procurement of land, buildings, &c., for the use of the corporation.

Whether, or to what extent, or in what form, the corporation subsequently created was liable for such advances, or whether there was an equitable lien upon the property purchased, or upon the money subscribed, it is not necessary to inquire here.

It is enough to say that the subscription to the stock imparted no authority as partners, or otherwise, to involve the subscribers in any liability not expressed in the agreement, or resulting from the procurement of the incorporation which the agreement contemplated.

In this view, the cases cited and relied upon by the counsel for the Appellants are not in conflict with the result stated.

Skinner v. Dayton et al. (19 J. R. 513) holds that when one or two or more members of an association make a contract purporting to bind the association, although without express authority, those who by their acts or assent had ratified the act are responsible and bound to him to contribute to damages resulting from the breach; and that a stipulation in the articles of association by which they agree to pay all assessments made upon their shares, or forfeit the same, with all previous payments thereon, did not relieve them from the obligation to contribute, and give to them an election to forfeit their shares.

Townsend v. Goewcy (19. Wend. 424) holds that when an incorporated joint-stock association is formed, and the subscribers agree to take the number of shares specified in their several subscriptions, and to pay in the same to trustees named, as such trustees shall make calls therefor, an action at law will lie in the names of such trustees to recover the amount of calls duly made, notwithstanding such trustees are also shareholders, and notwithstanding before suit brought the association has been incorporated and the trust has passed to other persons.

Cross v. Jackson (5 Hill, 478) is to the like effect. The other cases turn upon the question whether the liabilities incurred were according to the true construction of the articles of association, authorized by the associates, or ratified by them, or whether the

associates were liable to third persons for liabilities or debts incurred in furtherance of the object of the association, and not whether, as between themselves, they were bound to contribute to liabilities not authorized by such articles.

Considered, therefore, upon the facts found by the referee, there is no serious question in the case.

On the hearing in the Supreme Court, and in the argument of the Appellants' counsel, the question had a wider range.

The Supreme Court had power to review the whole case upon the evidence, and upon the questions of fact involved in the issue (Code, §§ 272, 268). Upon that review, and upon proofs showing that some of the subscribers have not paid their subscriptions in full, they have reserved to the Plaintiffs any rights they may have to compel such payments; and deeming the proof satisfactory that certain of the subscribers authorized the advances or liabilities to which contribution is sought, the Supreme Court authorized an amendment, upon terms, to enable the Plaintiffs to save the effect of the Statute of Limitations, and proceed for contribution from such Defendants.

We have not jurisdiction to review the findings of fact in cases coming before us on appeal from a judgment of affirmance in General Term, nor in case of reversal, unless it is stated in the judgment of reversal to have been reversed on questions of fact. So far as the Supreme Court modified the judgment of the Special Term, the modifications were in the Plaintiffs' favor, and the Defendants have not appealed.

If, by reason of an exception taken to the decision of the referee, on the ground that he *did not find* some fact which the Appellants claim was established by the evidence, we were at liberty to examine the proofs bearing on the question whether the Defendants intended a partnership, or did such acts as made them liable as partners inter se, or whether all the Defendants authorized the advances in question, I should still be of opinion that the judgment of the Supreme Court gave to the Plaintiffs all that they were legally or equitably entitled to.

The statute relating to the founding of academies (1 Rev. Stat.

461) authorized the founders and benefactors of any academy, or as many of them as shall have contributed more than one-half of the property collected for the use thereof, to apply to the Regents of the University for an incorporation, by a name specified in the application nominating the trustees; and it may be granted by an instrument under the common seal of the Regents. And thereupon the property and funds of the academy are vested in such trustees. The statute then proceeds to define the powers and duties of the trustees, &c.

It was shown that in January, 1853, a meeting of subscribers was held, and articles were adopted and signed by most of those present.

The first article provided that the institution should be called the Carlisle Seminary, *and be incorporated as soon as possible;* that the business affairs of the institution should be under the management and control of a Board of Trustees; that there should be twenty-one trustees, &c.; and other regulating articles were adopted. They elected twenty-one trustees, and afterwards the application was made to the Regents of the University for incorporation under the name designated, and the persons so chosen were nominated trustees, with the exception of two, one of whom declined the office, and the reason for the omission of the other does not distinctly appear.

I cannot think that the referee or the Supreme Court erred in regarding the articles so agreed to as not establishing any such relations between the Defendants as would authorize the Plaintiffs to contract debts or make advances on the credit of the associates. They were looking to an incorporation as the immediate means of effecting the object of the association. They fixed the name and agreed upon the trustees. They were to be the trustees who should manage the affairs of the institution, which should be incorporated as soon as practicable.

It would be an unreasonable latitude of construction to say that in the interval which might elapse the persons so designated were authorized to involve the association in debt, on the responsibility of the associates. So far as we can discover, there was

no impediment to an immediate incorporation, and this was evidently contemplated.

The other proceedings which were proved tend to show that certain of the subscribers, in their capacity of trustees, or otherwise, sanctioned the advances afterwards made, or authorized them; and, so far as they made themselves liable to contribution, the Supreme Court allowed the Plaintiffs the privilege of an amendment for the purpose of charging them.

It follows, I think, that whatever ground third persons may have had (if any) to charge the Defendants as jointly liable for the acts of the trustees, or any of them, there was an entire want of authority expressed or implied in the agreement, as between the associates, to make advances or incur liabilities on their credit, and that no right therefore exists to compel a contribution from the associates at large to reimburse the Plaintiffs.

The Appellants in their points suggest that they ought not to be concluded by their election not to amend according to the permission given them in the Supreme Court, and that this Court, if of opinion that the judgment should be affirmed, ought to give to the Appellants the privilege of making the amendment, and continuing the action, as if no appeal had been taken.

The Appellant, in that respect, has placed himself in a position analogous to that of a Defendant who demurs to the complaint, and who, when judgment is ordered for the Plaintiff, with leave to the Defendant to withdraw his demurrer and answer within a time limited, declines to act on the leave given, elects to submit to final judgment for the Plaintiff, and appeals therefrom to this Court. In such case his right to answer is waived, and this Court has no power to review it.

So, as I think, here we have only to say, the judgment must be affirmed.

All affirm.

<div align="right">

JOEL TIFFANY,
State Reporter.